UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JUAN T.R., | Case No. 26-CV-0107 (PJS/DLM) |
| Petitioner, | |
| v. | SUPPLEMENTAL ORDER |
| KRISTI NOEM, Secretary of the Department of Homeland Security; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; and DAVID EASTERWOOD, Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement, | |
| Respondents. | |

On January 8, 2026, petitioner Juan T.R. filed a petition for a writ of habeas corpus.[1]  The Court issued an order requiring respondents to file an answer no later than January 12, 2026.  Respondents failed to answer.  Accordingly, the Court granted the writ in part and ordered respondents to afford Juan a bond hearing within seven days or, failing that, to immediately release him from detention.  ECF No. 4.

Respondents neither held a bond hearing within the required time nor released Juan.  ECF No. 6.  The Court then issued a show-cause order and scheduled a hearing at

---

[1] Pursuant to this District's policy in immigration cases, the Court identifies petitioner only by first name and last initials.

which it ordered the personal appearance of Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement ("ICE").  ECF No. 7.  The Court noted, however, that if the parties filed a stipulation indicating that Juan had been released, the Court would cancel the hearing and would not require Lyons to appear.  *Id.*  The parties filed such a stipulation (ECF No. 9), and the Court then canceled the hearing in an order dated January 28, 2026 (ECF No. 10).

In its January 28 order, the Court expressed grave concerns about ICE's noncompliance with court orders.  The Court attached to its January 28 order an appendix that identified 96 court orders that ICE had violated in 74 cases.  The Court noted that "the list was hurriedly compiled by extraordinarily busy judges" and that, "[u]ndoubtedly, mistakes were made."  *Id.* at 2.

Unfortunately, the government's response to the Court's order was not to do a better job complying with court orders, but instead to attack the Court.  In an email to the undersigned dated February 9, 2026, Daniel N. Rosen, the United States Attorney for the District of Minnesota, accused the Court of wildly overstating the extent of ICE's noncompliance with orders.  Specifically, Rosen said that he had asked a lawyer in his office to review "a statistically strong sample of the 75 cases" listed in the appendix to the Court's January 28 order.  That "statistically strong sample" consisted of the first 12 cases on the list.  Rosen summarized the result of his inquiry as follows:

> So as I am seeing it, in eight out of eleven cases [the twelfth case was a duplicate], the Petitioners were released *on time*. In six of those eight cases, there was no violation at all. In one there was a violation regarding an interim step, but the release was on time. In one, the release was on time, but the status report was filed late. In one, where no specific deadline was set for return and release, the return and release took six days. In two cases, the releases were after the deadline . . . .

Rosen later concluded:

> Judge, please pardon me for being so direct, but your order of January 28 did not merely contain some errors, as you anticipated it may. Assuming the statistical sample we chose is as representative of the whole as I believe it likely is, the information compiled by others for your order was far beyond the pale of accuracy for an order that would be wielded so publicly and so sharply. The lawyers in my civil division didn't deserve it.

Because Rosen made serious allegations against the undersigned and the other judges of this District, the undersigned asked each judge to revisit the cases that he or she had submitted for inclusion in the appendix. The undersigned then had his law clerks independently check the accuracy of the information reported by the other chambers. All of this took some time, as this Court continues to be overwhelmed with the legal work created by Operation Metro Surge.

Attached to this order as Appendix A is the result of the Court's attempt to verify the accuracy of the assertions made in the January 28 order. Appendix A includes only cases that appeared in the appendix to the January 28 order. The Court did in fact find

some mistakes—mistakes that cut both ways. But the bottom line is that ICE violated 97 orders in 66 of the cases referred to in the January 28 order. The January 28 order had identified "96 court orders that ICE has violated in 74 cases." ECF No. 10 at 2. Obviously, the January 28 order was not "beyond the pale of accuracy," as claimed by Rosen.

As noted, Rosen asserted in his email that "[t]he lawyers in my civil division didn't deserve" the supposedly inaccurate January 28 order. Putting aside the fact that the January 28 order was not inaccurate, Rosen failed to mention that this Court said the following in the show-cause order that preceded the January 28 order:

> The Court expresses its appreciation to attorney Ana Voss
> and her colleagues [in the civil division], who have struggled
> mightily to ensure that respondents comply with court
> orders despite the fact that respondents have failed to
> provide them with adequate resources.

ECF No. 7 at 2 n.1.

The judges of this District have been extraordinarily patient with the government attorneys, recognizing that they have been put in an impossible position by Rosen and his superiors in the Department of Justice (leading many of those attorneys—including, unfortunately, Ana Voss—to resign). What those attorneys "didn't deserve" was the Administration sending 3000 ICE agents to Minnesota to detain people without making any provision for handling the hundreds of lawsuits that were sure to follow.

Finally, in his February 9 email, Rosen said:

> For our part, we commit to the court that we will redouble our efforts to achieve compliance by our client across the board. The truth is that efforts we have already been undertaking for weeks have led to considerable improvement—efforts which have apparently gone unrecognized by some on the bench, even though the numbers prove them out. We will continue to try to find the ways to improve.

This, too, appears to be untrue. Attached as Appendix B is a list of *additional* cases in which ICE has violated court orders, most of which violations occurred after entry of the January 28 order. Despite Rosen's assurance of "redouble[d]" efforts that have "led to considerable improvement," Appendix B documents 113 additional orders that ICE has violated in 77 additional cases—again, above and beyond the 97 orders that ICE violated in the 66 cases identified in Appendix A.

If anything is "beyond the pale," it is ICE's continued violation of the orders of this Court. Increasingly, this Court has had to resort to using the threat of civil contempt to force ICE to comply with orders. The Court is not aware of another occasion in the history of the United States in which a federal court has had to threaten contempt—again and again and again—to force the *United States government* to comply with court orders.

This Court will continue to do whatever is required to protect the rule of law, including, if necessary, moving to the use of criminal contempt.  One way or another, ICE will comply with this Court's orders.

Dated: February 26, 2026                    /s/ Patrick J. Schiltz
                                                         Patrick J. Schiltz, Chief Judge
                                                         United States District Court